Caruthers, J.,
delivered the opinion of the Court.
This bill was filed for the construction of the will of Josiah *416 Duncan, deceased. Nancy Duncan, the widow, married Horatio Philips, and the question is, whether her estate in certain slaves and other property, terminated thereby, or continued until her death. The Chancellor thought the latter, and the case is brought up for revision.
By the second clause he gave her $1,000 in money, and a negro boy, Berry, “to manage and dispose of as she may think proper forever.” In the same clause, he says:
“ I also give and bequeath to my said wife, Nancy, during her natural life or widowhood, the tract of land I now live on ; also, all the negroes I may die seized and possessed of; also, all my moneys, notes, accounts,” &c., &c. “ It is my will and desire that my said wife, Nancy, shall not be required to give bond and security for the forthcoming of said property and money at her death, but that she have the free use and control of all said property during her natural life or widowhood, as aforesaid.”
In the fourth clause he says :
“ It is my will and desire that at my wife’s death, that my lands be sold and my negroes divided or sold, and that all my other property, except that already specially bequeathed, be sold and equally divided between my brothers and sisters, and half brothers and sisters, and their heirs, with this exception,” &c.
We are not able to concur with the Chancellor in his construction of this will. He held that the limitation of her estate to her marriage, must be disregarded, and a life estate given to her without regard to that contingency. This construction is based upon the provision in the second clause, to the effect that she is not required to give a bond for the “forthcoming of the property at her death,” and the fourth clause, which provides that the sale and distribution of the property or its proceeds among the legatees of the remainder, is to take place “at her death,” without any' reference to the event of her second marriage.
Now, what was his manifest intention ? Is no effect to be given to the term “ widowhood ” twice repeated, as the meas *417 ure of the estate given to her ? Can that he disregarded or expunged by construction? Effect must be given to all the parts if they are reconcilable, and not repugnant. To accomplish this, words may be supplied, or even disregarded, where it becomes necessary.
The fourth clause may well stand with the second. All the difficulty arises from the omission of the words “ or marriage ” in the fourth clause, after the words “my wife’s death.” As framed it only refers to one of the events, provided for in the second clause, as the period of division among others, pre-termitting the other. If she should remain a widow, she is to enjoy the property until her death, and then to go to his brothers and sisters. But if she should marry, what then? That event is to terminate her estate by the second clause; she is only to enjoy the property during “ widowhood.” When the state of widowhood ends, where is it to go ? She can hold it no longer, for that is the limit fixed. Certainly to the brothers and sisters. Their right would spring up as well upon the happening of the one event as the other. It was with her to determine which it should be. This must be the construction when the whole will is taken together, and effect given to all its parts. Such must have been his intention. It will not do to strike out the word widowhood, as a limit to her estate. It is too important a word to disregard, and its proper force must be given to it. No violence is done to the fourth clause by this construction. It is made to operate upon both events instead of one, and that to carry out the spirit and intention of the testator, as manifested in the preceding clause.
The case of Hughes and Wife v. Boyd, 2 Sneed, 512, settles that this kind of a provision in a will is not void because in restraint of marriage. The doctrine and reasoning of that case applies to this, and need not be repeated. There is no distinction in principle between them. This doctrine is not hard upon the widow. She can dissent, and avoid all testamentary restrictions, and stand upon the widow’s rights as fixed by the law. Having failed to do this, her rights must be governed by the will. Having chosen to place herself and *418 take her rights under the 'will, she must abide by it in all respects. The election and its consequences are before her when she thinks of changing her condition from that of a widow to a wife. If she prefers the husband to the property, she will marry, and if not she may still enjoy her former husband’s bounty. She can not have both blessings, but must choose between them and abide by her election.
We are constrained, though somewhat reluctantly, to reverse the decree in fayor of the woman, and remand the case for the execution of the 'will by the executors, under the direction of the Chancery Court, upon the construction herein given.